[No. 15536.   Department Two.   June 8, 1920.]

*In the Matter of the Guardianship of the Estate of* MARTHA E. BAYER.[1]

INSANE PERSONS (4)—GUARDIANSHIP—INCOMPETENCY—EVIDENCE— SUFFICIENCY. In proceedings to discharge a guardian, findings that the ward was competent to manage her own affairs are not sustained, where it was shown that she had made and still insisted upon an improvident bargain with a brother who was dealing unfairly with her, notwithstanding it appeared that she was not insane and required no supervision over her person.

HOLCOMB, C. J., and MOUNT, J., dissent.

Appeal from an order of the superior court for Lincoln county, Sessions, J., entered May 6, 1919, discharging a guardian of an incompetent person, after a hearing before the court. Reversed.

*Samuel P. Weaver (S. H. Boyles,* of counsel), for appellant.

*C. B. Willey* and *Merritt, Lantry & Merritt,* for respondent.

FULLERTON, J.—In November, 1916, one John Dotson filed a petition in the superior court of Lincoln county, averring therein that Martha E. Bayer had valuable real property situated in the county named, that she was incompetent to manage her own affairs, and asked that a guardian be appointed over her estate. The application was regularly heard by the judge of the superior court, and, at the conclusion of the hearing, denied. The applicant appealed to this court from the order entered in the trial court, where the order was reversed and the cause remanded with instructions to the trial court to cause letters of guardianship to issue. *In re Bayer's Estate,* 101 Wash. 694, 172 Pac. 842.

[1]Reported in 190 Pac. 323.

After the return of the remittitur from this court, the trial court, on July 2, 1917, appointed D. R. Cole as guardian. Cole qualified as such and has been since so acting.

This is a petition on the part of Martha E. Bayer to discharge the guardian. It was filed in the superior court on August 18, 1918. In the petition, Mrs. Bayer averred that she had fully recovered from any mental disability that might have existed at and prior to the former hearing, and was not then suffering from any mental weakness or disability whatsoever. The application was resisted on the part of the guardian, and a hearing was had in which voluminous testimony was taken. The trial court, at the conclusion of the hearing, discharged the guardian, and from the order of discharge, the guardian prosecutes the appeal.

We do not think it profitable to discuss the evidence at length. It was directed mainly to the question of the sanity of Mrs. Bayer. While it establishes, in our opinion, the fact that she is not insane in the sense that she requires confinement, or requires the supervision of a guardian over her person, we think it falls far short of establishing that she is competent to manage her property interests, or, as the statute has it, "capable of managing her own affairs." As we stated in our former opinion, Mrs. Bayer conveyed to one of her brothers the property in Lincoln county for $3,000 in cash, a note for $10,000, and the assumption of a mortgage which was then upon the property of $7,000; a consideration then less than one-half the value of the land itself. It further appears that, at the time of this sale, the land had upon it a matured crop, which afterwards netted the purchaser some $1,500 more than his cash outlay, and that he has since paid nothing on the obligations, save an inconsiderable sum, the major

portion of which was a charge for board furnished Mrs. Bayer while she was residing at his farm in the state of Nebraska.' The note is unsecured and draws interest at five per centum. The real property conveyed is farm and pasture land, and yields in annual rentals more than ten times the annual interest on the note. As a business transaction, which the brother insists that it was, it was an unconscionable bargain in which the losses were all on the part of Mrs. Bayer; clearly demonstrating, as we view it, incompetency on her part to bargain in her own interests. We find nothing in the additional evidence that shows a return of capacity. She still insists that she is satisfied with her bargain, and seems to be impressed with the idea that the present proceedings are proceedings on the part of other members of her family to deprive her of the property, notwithstanding the fact that she has attempted voluntarily to part with her interests. As further evidence of her incompetency in property matters, it was shown that she owns an interest in property in another state, yet gives it no personal attention and does not know its character or value; and she testifies that, from an item she saw in a newspaper, she was led to believe that she still owned a tract of land which she had conveyed to a sister many years ago.

The trial court, in his remarks made at the time of passing upon the present application, laid stress upon the fact that the proceeding was a squabble among Mrs. Bayer's relatives, and that the interest taken in the cause by certain of her brothers, whom the court names, arises from the fact that they desire an interest in the property. It may be that the brothers who are censured will inherit from Mrs. Bayer if they survive her, and that their interests are selfish to that extent. But we think, nevertheless, that their conduct is meri-

torious when compared with the conduct of the brother
whom the court does not name or censure. This
brother has taken the property from Mrs. Bayer and
has given her nothing for it save his naked promis-
sory note. If the guardian is discharged, he has it
within his power to so dispose of the property as to
leave Mrs. Bayer remediless on the note, and, after
so doing, can thrust her out for the remainder of her
existence on the cold charities of the world. On the
other hand, the action of the other brothers, if success-
ful, will preserve the property for her use, and the
property in the hands of the court will furnish her with
an abundance for the remainder of her existence. Con-
sidering the question in this light, therefore, we think
the comparison not unfavorable to the brothers who
are seeking to preserve the property. Another matter
is worthy of mention; this contest is waged solely in
the interests of the brother who has the title, or, at
least, he will be the sole beneficiary of the proceeding
if it is successful, yet he has permitted his sister to
bear the expense of the proceedings out of the fund
she received from him as a cash payment on the pur-
chase price of the property; a payment which, as we
say, was returned to him, with $1,500 in addition,
shortly after he made the purchase, out of the matured
crop then on the premises.

But the real issue is not what the brothers may de-
sire. It is Mrs. Bayer's interest that is alone to be
considered. If she is mentally competent to manage
her own affairs, she should be permitted to do so, how-
ever much her acts in relation thereto may deprive her
of her means of subsistence. If she is not so compe-
tent, the courts should interfere and protect the prop-
erty for her use, however much she may will to the
contrary. From the record before us, we can but think

she is incompetent, and that the court erred in discharging the guardian.

The order is reversed, and the cause remanded with instructions to deny the prayer of the petition.

Tolman and Bridges, JJ., concur.

Holcomb, C. J., and Mount, J. (dissenting)—We dissent. In our opinion, the analysis of the evidence does not by any means indicate a preponderance of the facts contrary to the findings of the trial court. Moreover, the trial court had the advantage of having all the witnesses and parties before it, and was thereby enabled to judge of their credibility in a way in which we are not. If, as the majority opinion states, Mrs. Bayer is "not insane in the sense that she requires confinement, or requires the supervision of a guardian over her person," that certainly goes very far to justify the trial court's findings and conclusions. The mere fact that Mrs. Bayer preferred one of her relatives to another, or that she was generous or reckless with her property, does not of itself indicate incompetency. Many persons are extravagant or over-generous, or partial to one or another of their relatives or friends, but are not, for that reason, considered incompetent to manage their affairs. If sane, Mrs. Bayer has the right to squander her property to the last dollar, if she desires.

The judgment should be affirmed.